UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JANA SHORES,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**WELLA OPERATIONS US LLC**,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Jana Shores ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, the "Class," as more fully defined below), bring this Class Action Complaint against Defendant Wella Operations US LLC ("WELLA" or "Defendant"), and, based upon Plaintiff's personal knowledge, investigation by retained counsel, and personal belief, alleges as follows:

**NATURE OF THE CASE**

1. When consumers shop for products, they expect that companies will follow the law in promoting and advertising those products.

2. Consumers expect that, if they are sharing their data with companies in connection with a potential transaction, the companies will be transparent about what data is being collected, how it is being used, and by whom.[1] This is particularly the case when companies collect what has come to be known as "biometric data."

---

[1] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=646d68503f4c (last visited December 12, 2022).

3. Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data. Fingerprint authentication, where a user's fingerprint is used in lieu of a password or key, is another type of technology that uses biometric data.

4. While more than half of consumers are comfortable using fingerprint scans,[2] consumers have substantial privacy concerns regarding the use of facial scanning. According to a recent survey, more than 80% of consumers are uncomfortable with apps storing images of their faces.[3] And for good reason: for example, in the not-too-distant past, a relatively unknown company, Clearview AI, scraped user photos from social media companies' databases, and used facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[4]

5. In response to the ever-increasing prevalence and proliferation of biometric information collection (whether lawful or not), the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. 14, *et seq*. ("BIPA").

6. BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

---

[2] New Survey on Biometric Technology Shows Consumers Are OK With Some Forms and Wary of Others, *UT News* (May 3, 2018), https://news.utexas.edu/2018/05/03/new-survey-on-consumer-attitudes-toward-biometric-technology/ (last visited December 12, 2022).
[3] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, CivicScience (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/ (last visited December 12, 2022).
[4] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* https://www.wired.com/story/clearview-ai-new-tools-identify-you-photos/#:~:text=Clearview%20has%20collected%20billions%20of,tying%20them%20to%20online%20profiles. (last visited December 12, 2022).

7. In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n overwhelming majority of members of the public *are weary of the use of biometrics when such information is tied to finances and other personal information.*" 740 Ill. Comp. Stat. 14/5(emphasis added).

8. Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

9. Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, WELLA —a multi-million-dollar haircare company— has refused, and continues to refuse, to inform users that it is using technology on its website to collect their biometric facial scans, and neither informs users that their biometricidentifiers are being collected, nor asks for their consent.

10. WELLA invites consumers to virtually "try on" its high-end hair dye through its website's "Virtual Try-On" feature. Through this feature, visitors to WELLA's website—including Plaintiff and the other Class members—are able to view themselves in an AI impression of a different hair color. All a user has to do is enable their computer or phone camera to engage a live video session or upload their photo to the website.

11. But, unbeknownst to its website users—including Plaintiff and the other Class members—WELLA collects detailed and sensitive biometric identifiers and information, includingcomplete facial scans, of its users through the Virtual Try-On tool, and it does this without first obtaining their consent, or informing them that this data is being collected.

12. WELLA also fails to disclose to visitors of its website who use the Virtual Try-On tool—including Plaintiff and the other Class members—that their biometric information or

3

biometric identifiers are being collected or stored.

13. WELLA also fails to provide users of a specific purpose for the collection of their biometric information or biometric identifiers, or a schedule setting out the length of time during which that biometric information or biometric identifiers will be collected, stored, used, or will be destroyed.

14. WELLA has violated BIPA—and continues to violate BIPA—each and every time a website visitor based in Illinois uses the Virtual Try-On tool, because WELLA continues to collect and store or facilitate the storage of biometric information or biometric identifiers without disclosure to or consent of any of the consumers who try on hair colors on their website, necessarily using WELLA's Virtual Try-On tool to do so.

15. As a result of WELLA's BIPA violations—violations that are ongoing and continue through the present day—Plaintiff, individually and on behalf of the other Class members, ask the Court to impose upon WELLA the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiff' biometric identifiers and biometric information, as well as injunctive relief requiring WELLA's destruction of already-collected and stored information, and its adoption of disclosures which inform consumers about WELLA's collection of their biometric data and identifiers.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiff and Defendant are domiciled in different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

17. This Court has personal jurisdiction over WELLA because Defendant directs,

markets, and provides its business activities throughout the State of Illinois, and makes its active commercial website available to residents of Illinois for those interested in entering into contracts over the Internet with Defendant. Indeed, Defendant's website allows residents of Illinois to make purchases utilizing the website. During the relevant time frame, Defendant entered into contracts for the sale of goods with residents of Illinois that involved the knowing and repeated transmission of computer data over the Internet. This resulted in Defendant generating revenue from sales to residents of Illinois, as well accepting payments from Illinois residents through the site and ultimately shipping products to Illinois. Plaintiff's and the Class members' claims arise directly from Defendant's operation of its website.

18. Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that Defendant's acts complained of herein occurred within this District, subjecting Defendant to jurisdiction here. Thus, Defendant knew or should have known that it was causing harm to those individuals while they were in Illinois such that it was foreseeable to Defendant that its interceptions would harm Plaintiff and other similarly-situated individuals located in Illinois.

19. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

**PARTIES**

20. Plaintiff Jana Shores is a citizen and a resident of the State of Illinois, residing in Chicago, Illinois.

21. Defendant Wella Operations US LLC is, and at all times relevant hereto was, a

corporation duly organized and validly existing under the laws of Delaware and maintains its principal place of business in California. Defendant is therefore a citizen of Delaware and California.

## FACTUAL ALLEGATIONS

**A. BIPA'S Legal Framework**

22. The Illinois General Assembly enacted BIPA to protect the privacy rights of every Illinois resident who has their unique, biometric identifiers captured or retained by self-interested, profit-obsessed companies.

23. In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection because companies frequently collect it from individuals like Plaintiff and the other Class members. Specifically, the General Assembly found that "[b]iometrics are unlike other unique identifiers" like Social Security Numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 Ill. Comp. Stat. 14/5(c).

24. Thus, a person whose biometrics are compromised "has no recourse" and "is at heightened risk for identify theft." *Id*.

25. When enacting BIPA, the General Assembly recognized that "[t]he full ramifications of biometric technology are not fully known." 740 Ill. Comp. Stat. 14/5(e). Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 Ill. Comp. Stat. 14/5(f).

26. BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10.

27. "Biometric information" is identified as "any information, regardless of how it is

6

captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

28. Accordingly, BIPA requires "private entities"—including companies like WELLA— that collect certain biometric identifiers or biometric information, or cause such information and identifiers to be collected, to take a number of specific steps to safeguard the biometric data they collect, store, or capture.

29. Specifically, companies that collect the above-referenced biometric identifiers or biometric information, such as WELLA, must obtain informed consent from consumers prior to collecting such data from them, and they must publicly disclose to consumers their uses, retention of, and a schedule for destruction of the biometric information or identifiers that they do collect.

30. With respect to safeguarding biometrics, BIPA requires that private entities—including companies like WELLA—that possess biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id*. § 14/15(a).

31. BIPA also requires that private entities in possession of biometric identifiers or biometric information—including companies like WELLA—must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the

same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id*. § 14/15(e).

32. With respect to informed consent, BIPA provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id*. § 14/15(6).

33. BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id*. § 14/l1(c).

34. Under BIPA, private entities—including companies like WELLA—are prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information (or causing it to be done) unless the consumer has consented to such disclosure or redisclosure. *Id*. § 14/15(d).

35. BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id*. § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides

8

for the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

**B. Plaintiff's Experience**

36. While at her home in Illinois, Ms. Shore used WELLA's website (https://www.wella.com/international/) at least once on or around December of 2020 to try on various shades of potential hair colors.

37. Ms. Shores accessed WELLA's Virtual Try-On tool on her phone and used the real-time Virtual Try-On feature.

38. Ms. Shores was also not informed by the Virtual Try-On tool that using the tool would allow WELLA to collect her biometric information and identifiers.

39. Ms. Shores did not understand that WELLA would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool had she been aware of this fact.

40. WELLA never obtained Ms. Shores' informed, written consent to collect, transmit, store, or process her biometric information, nor did WELLA inform Ms. Shores about the length of time her biometric information would be stored, when it would be destroyed, or that it would transfer her biometric information to a third party for processing.

41. Ms. Shores never provided a written release to WELLA authorizing it to collect, store, or use her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

42. Ms. Shores does not remember seeing any terms of service or privacy policy when using the Virtual Try-On tool, nor does she remember WELLA making such policies readily accessible so that she could review them prior to using the Virtual Try-On tool.

**C. WELLA Collects Its Website Users' Biometric Information and Identifiers Through Its Virtual Try-On Tool**

43. WELLA operates its website (https://www.wella.com/international/) and markets

and sells its products (including hair dyes) through that website.

44. WELLA sells hair dye and other types of haircare related products ("hair products") through its North American website, which allows users and potential customers to use a tool called "Virtual Try- On" which allows a website user to see how WELLA's various hair products would look on their face.

45. When a user of WELLA's website views hair products for which the Virtual Try-On tool is available, WELLA invites that potential customer to access its website's Virtual Try-On feature by presenting a "Tap & Try!" button that appears below the product title for the product being viewed (as illustrated by the screenshot that follows).



46. When website users click the "Tap & Try!" button on WELLA's website, the website activates its Virtual Try-On overlay, which uses the user's computer or phone camera to display, on WELLA's website, a real-time image of themselves reflecting one of the various hair

products WELLA sells.



47. When a user clicks "Live Try On", WELLA's Virtual Try-On tool automatically activates the users' webcam, so that the user's real-time image appears.

48. Once the webcam is on, the user will see their WELLA hair products selections placed on their face, with the image moving and changing angles, in real time, to comport with the user's facial movements and adjustments.

49. The Virtual Try-On feature is able to accurately detect, in an instant, where hair products should be placed on a website visitor's face, and moves the reflected hair products with the user's movements to ensure that it appears as if the user is actually wearing the hair products.

50. The Virtual Try-On Tool on WELLA's website is powered by an application called "YouCam Makeup" embedded in WELLA's product webpages, which was created by Perfect Corp. WELLA incorporates Perfect Corp.'s proprietary technology into its website in order to collect and process the user's facial geometry, which allows, in real time, the proper placement of the haircare product on the user's face.

11

51. WELLA also offers its website users—including Plaintiff and the other Class members—the option to take a photo of the product displayed on their faces, to save the image on their computers or smartphones for sharing or later review.

52. In addition to or instead of using the real-time Virtual Try-On feature on WELLA's website—which requires a smartphone or computer camera—a website user may, instead, upload a photo of his or her face, after which WELLA will place the hair products in the correct place on the user's photograph. Uploading a photo still requires the use of facial scans to determine the correct placement of the augmented hair on a user's face.

53. The Virtual Try-On Tool on WELLA's website can also capture the user's facial geometry from photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try-On tool, or on a photo uploaded to the tool. These facial-geometry scans are used to identify the shape and features of the user's face to accurately, and virtually, overlay the hair products onto the user's facial image.

54. WELLA directs users to use its Virtual Try-On tool, which collects their biometric information and facial scans.

55. But for WELLA's website, consumers—including Plaintiff and the other Class members—would not have had their biometric information collected, stored, and processed. WELLA causes the capturing and processing of its website users' biometric identifiers, extracted from the users' images while using the Virtual Try-On tool on WELLA's website.

56. WELLA's website extracts the user's biometric data, which is combined with data necessary to show WELLA's hair products on the user's face, before that data is repackaged and sent back to the user's device.

57. WELLA does not inform its website users using its website's Virtual Try-On technology (in writing or otherwise)—including Plaintiff and the other Class members—that its

website will capture, transfer, and facilitate the processing and storage of facial geometry—a biometric identifier that BIPA specifically protects—or the specific purpose and length of term for which it is collecting, facilitating the storing of, or using of such data.

58. Nor does WELLA obtain its website users'—including Plaintiff and the other Class members'—informed, written consent before capturing or collecting such data.

59. There is no approval, agreement, or confirmation process that a WELLA website user is required to go through to use the Virtual Try-On tool, and WELLA provides no warning that it is about to facilitate the capturing and storage of the user's biometric data.

60. In further contravention of BIPA, WELLA does not have a publicly-available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from its website users, including Plaintiff and the other Class members.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All persons whose biometric identifiers were captured by WELLA through use of the Virtual Try-On tool on Defendant's websites, including wella.com/international, while residing in Illinois.

62. The class period for the class as defined above is to the fullest extent allowed by law.

63. Excluded from the Class are WELLA and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

64. This action has been brought and may properly be maintained on behalf of the Class

proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

65. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. While Plaintiff believes that there are not less than tens of thousands of Class members, the precise number of Class members is presently unknown to Plaintiff, but may be ascertained from WELLA's books, records, and electronically stored information. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

66. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a. Whether WELLA qualifies as a "private entity" as defined by 740 Ill. Comp. Stat. 14/10;

    b. Whether WELLA captures, collects, stores, or distributes information that qualifies as "biometric information" or "biometric identifiers" of users of the Virtual Try-On tool on WELLA's website, as defined by 740 Ill. Comp. Stat. 14/10 and 740 Ill. Comp. Stat. 14/15, *et seq.*;

    c. Whether WELLA developed or made publicly available a written policy establishing a retention schedule and guidelines for destroying its Virtual Try-On tool users' biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(a) requires;

    d. Whether WELLA obtained an executed written release from each user of WELLA's Virtual Try-On tool before capturing their biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(b) requires;

    e. Whether WELLA, previously or on an ongoing basis, collected, captured, purchased, received through trade, or otherwise obtained its website users' biometric identifiers or biometric information through its Virtual Try-On tool on its website, in violation of 740 Ill. Comp. Stat. 14, *et seq.*;

    f. Whether WELLA's conduct was and is willful, reckless, or negligent;

    g. The appropriate measure of damages to award Plaintiff and the other Class

    members; and

  h. The appropriate injunctive relief to which Plaintiff and the other Class members are entitled.

67. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class member used the same Virtual Try-On tool on WELLA's website, through which WELLA collected, captured, purchased, received through trade, or otherwise obtained their biometric identifiers or biometric information, and did not inform Plaintiff or the other Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric information or biometric identifiers from Plaintiff or the other Class members.

68. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members whom she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where a defendant breached statutory obligations, and Plaintiff intends to vigorously prosecute this action. Class members' interests will be fairly and adequately protected by the Plaintiff and her counsel.

69. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication,

economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of 740 Ill. Comp. Stat. 14/15(b)**
**(Failure to Inform in Writing and Obtain Written Release from Users Prior to Capturing, Collecting, or Storing Biometric Identifiers)**

70. Plaintiff reasserts, realleges, and incorporates by reference each of the allegations contained in each of the preceding Paragraphs, as though asserted and alleged herein.

71. Plaintiff brings this claim individually and on behalf of the other Class members.

72. The WELLA website(s) Virtual Try-On technology captured—and continues to capture—Plaintiff's and the other Class members' facial geometry information.

73. Facial geometry is a biometric identifier protected by BIPA.

74. BIPA prohibits private entities like WELLA from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining website users' biometric identifiers or biometric information without first informing them in writing of such activities; informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by the websites users whose biometric identifiers or biometric information is being collected.

75. WELLA does not inform its customers in writing that their biometric information will be collected through the use of the Virtual Try-On tool; does not inform them in writing of the specific purpose and length of time that their biometric information will be collected, stored, and used; and does not obtain a written release from its customers informing them that, by using WELLA's Virtual Try-On tool, their biometric information and biometric identifiers will be collected.

76. Upon information and belief, WELLA is continuing to collect, capture, and store

biometric information and biometric identifiers of its website(s)'s users, without the specific permission required by BIPA.

77. Plaintiff and the other Class members have been injured by WELLA's conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to WELLA's collection, capture, and storage of their biometric information and biometric identifiers, and the sharing of that data with third parties; accordingly, the imposition of statutory damages under BIPA is appropriate here.

### **REQUEST FOR RELIEF**

**WHERFORE**, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter an order granting the following relief:

a. Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the Class defined herein;

b. Appointing Plaintiff as representative of the Class and her undersigned counsel as Class counsel;

c. Entering judgment in favor of Plaintiff and the other Class members and against WELLA;

d. Awarding Plaintiff and the other Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of WELLA's BIPA violations;

e. Issuing an injunction ordering WELLA to comply with BIPA and to disclose to Plaintiff and the other Class members whether WELLA possesses their biometric identifiers or biometric information, WELLA's uses of their biometric information or biometric identifiers; and WELLA's retention and destruction policies regarding

their biometric information or biometric identifiers;

f. Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 Ill. Comp. Stat. 14/20; and

g. Granting such other and further relief as the Court deems appropriate.

## JURY TRIAL REQUESTED

Plaintiff, individually and on behalf of the other Class members, request a trial by jury onall claims so triable.

Dated: December 20, 2022                              Respectfully submitted by,

*/s/Yitzchak Zelman*
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
Yitzchak Zelman, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282
Email: yzelman@marcuszelman.com

*Counsel for Plaintiff and the Proposed Class*